[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11376
Non-Argument Calendar

_____

D.C. Docket No. 9:13-cv-80907-WM


CHARLOTTE TAYLOR-TILLOTSON,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 22, 2017)

Before MARCUS, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Charlotte Taylor Tillotson, proceeding pro se, appeals the district court's

order affirming the denial by the Commissioner of the Social Security

Administration ("SSA") of her application for disabled widow's benefits ("DWB"), under 42 U.S.C. § 405(e). On appeal, Taylor-Tillotson appears to argue that: (1) she and the late Mr. Lawrence Tillotson ("Mr. Tillotson") had a common-law marriage that met the relationship requirement for DWB eligibility and she did not waive this argument by failing to raise it before the Administrative Law Judge ("ALJ"); (2) her amended alleged disability onset date established that she was disabled before the period relevant to determining her DWB eligibility; and (3) she was denied her Fourteenth Amendment due process right to a fair trial with an impartial judge.[1] After careful review, we affirm.

First, we are unpersuaded by Taylor-Tillotson's argument that she qualified for disabled widow's benefits. We review the Commissioner's factual findings with deference and its legal conclusions de novo. Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1260 (11th Cir. 2007). We review the decision of the ALJ as the Commissioner's final decision when the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision. Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). We do not reweigh evidence or substitute our judgment for that of the Commissioner, but instead review the entire record to determine if the

---

[1] Because Taylor-Tillotson failed to develop any argument in her initial brief that the Commissioner erred by failing to file a complete copy of the record of evidence on which her findings and decisions were based, she has abandoned this issue on appeal. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681-82 (11th Cir. 2014). As we've recognized, issues not briefed on appeal by a pro se litigant are deemed abandoned. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008).

decision reached is reasonable and supported by substantial evidence. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence is the relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Doughty, 245 F.3d at 1278. Substantial evidence is more than a mere scintilla. Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998).

The ALJ has a basic duty to develop a full and fair record. Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 (11th Cir. 2015). A full and fair record ensures that the ALJ has fulfilled his duty to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts, and enables a reviewing court to assess whether the ultimate decision on the merits is rational and supported by substantial evidence. Welch v. Bowen, 854 F.2d 436, 440 (11th Cir. 1988).

While we've previously deemed it improper for an ALJ to consider issues not raised or argued by a claimant, Sheppeard v. Heckler, 760 F.2d 1253, 1254 (11th Cir. 1985), the Supreme Court has said more recently that the ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits. Sims v. Apfel, 530 U.S. 103, 111 (2000). The Supreme Court has added that in deciding whether to grant review, the Appeals Council, not the claimant, has the primary responsibility for identifying and developing the issues. Id. at 111-12. Since then, we held that a Social Security claimant's failure to raise an issue at the administrative level does not deprive a court of jurisdiction to consider an issue

raised for the first time during judicial proceedings.  Loudermilk v. Barnhart, 290

F.3d 1265, 1268 & n.1 (11th Cir. 2002) (citing Sims, 530 U.S. at 107) (considering

a claimant's due process claim although he had not raised it with the SSA).

A remand for further factual development of the record before the ALJ is

proper if the record reveals evidentiary gaps that result in unfairness or clear

prejudice.  Henry, 802 F.3d at 1267.  A remand pursuant to the sixth sentence of §

405(g) is appropriate when the claimant presents evidence that was not in existence

or available during the administrative proceedings and that might change the

results of those proceedings.  42 U.S.C. § 405(g); Ingram, 496 F.3d at 1267.

To qualify for benefits as a disabled widow, a claimant must meet the

requirements of 42 U.S.C. § 402(e), including that: (1) she is at least 60 years of

age, or is at least 50 and has a disability as defined at 42 U.S.C. § 423(d); (2) she is

the widow of a wage earner who died fully insured; and (3) she is not married.  42

U.S.C. § 402(e); see also 20 C.F.R. § 404.335(a), (c).  To determine whether the

claimant is the widow of the insured, the Commissioner looks to the laws of the

state where the insured had a permanent home when he died.  42 U.S.C. §

416(h)(1); 20 C.F.R. § 404.345.  A claimant qualifies as a widow if: (1) the courts

of the state in which the insured was domiciled at the time of death would find that

the claimant and the insured were validly married; or (2) under the intestacy laws

of the state in which the insured was domiciled, the claimant would inherit the

insured's personal property as his widow.  42 U.S.C. § 416(h)(1)(A); Ray v. Bowen, 812 F.2d 675, 677-78 (11th Cir. 1987).  A claimant is entitled to widow's benefits as a surviving divorced spouse of a person who died fully insured if, among other things, the claimant was validly married to the insured for at least ten years before their divorce became final.  20 C.F.R. § 404.336.

The state of Montana recognizes common-law marriages.  See MONT. CODE ANN. § 40-1-403 (1975).  To establish common law marriage in Montana, the party asserting the existence of a marriage must prove that: (1) the parties were competent to enter into a marriage; (2) the parties assumed a marital relationship by mutual consent and agreement; and (3) the parties confirmed their marriage by cohabitation and public repute.  State v. Bullman, 203 P.3d 768, 771-72 (2009).

Here, substantial evidence supported the ALJ's determination that Taylor-Tillotsone did not meet the relationship requirement for DWB eligibility as Mr. Tillotson's widow or his surviving divorced spouse.  Henry, 802 F.3d at 1267.  For starters, the record shows that Taylor-Tillotson and Mr. Tillotson were married in Montana on August 28, 1977, and the divorce decree was dated November 21, 1979.  Because they had not been married for ten years before the divorce became final, Taylor-Tillotson was not entitled to DWB as Mr. Tillotson's surviving divorced spouse.  20 C.F.R. § 404.336.

As for Taylor-Tillotson's claim that she and Mr. Tillotson had a common-law marriage at the time of his death -- an argument she did not waive even though she did not raise it before the ALJ, Loudermilk, 290 F.3d at 1268 & n.1-- it fails. At best, the military records Taylor-Tillotson presented in support of a common-law marriage with Mr. Tillotson were inconclusive.  The records indicate that Mr. Tillotson had received compensation for spousal-type "BAQ" (housing allowance) in November and December 1991, but those records do not list Taylor-Tillotson as the contemplated spouse.  Rather, Mr. Tillotson's death certificate provided that he was a Montana resident, was not married, and had no surviving spouse when he died on May 3, 1995.  And in 2013, the Supreme Court of Montana dismissed Taylor-Tillotson's appeal of the denial to set aside her divorce decree, reasoning that it would not rescind a divorce decree where one spouse was deceased and could not refute a contention that the divorce was invalid.  In so doing, that court implicitly rejected Taylor-Tillotson's argument that she and Mr. Tillotson had a common-law marriage.  On this record, the 1991 military records would not have helped Taylor-Tillotson meet her burden to prove that she cohabited with Mr. Tillotson nor would they have changed the outcome of her marital-status determination.  Bullman, 203 P.3d at 771-72; Ingram, 496 F.3d at 1267.  Thus, the ALJ relied on more than enough evidence to conclude that Montana courts would not find that Taylor-Tillotson and Mr. Tillotson were validly married at the time of

6

his death and that she was not entitled to DWB as Mr. Tillotson's disabled widow. 42 U.S.C. §§ 402(e), 416(h)(1); 20 C.F.R. § 404.335; Fagle, 150 F.3d at 1322.

Because the district court correctly determined that substantial evidence supported the ALJ's determination that Taylor-Tillotson did not satisfy the relationship requirements for DWB eligibility, we decline to address whether substantial evidence supported the ALJ's alternative determination that Taylor-Tillotson was not disabled during the relevant period.

We are also unconvinced by Taylor-Tillotson's claim that she was denied her Fourteenth Amendment due process right to a fair trial with an impartial judge. We review de novo a district court's ruling on whether to remand in light of new evidence. Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001). A district court judge's decision not to recuse himself is reviewed for abuse of discretion. Thomas v. Tenneco Packaging Co., 293 F.3d 1306, 1319-20 (11th Cir. 2002). Where an act must be done within a specified time, the court may, for good cause, extend that time. Fed. R. Civ. P. 6(b)(1). We review a district court's denial of an extension of time for abuse of discretion. See Young v. City of Palm Bay, Fla., 358 F.3d 859, 863-64 (11th Cir. 2004). Under the abuse-of-discretion standard, we will affirm so long as the district court does not commit a clear error in judgment. Id. at 863.

7

In examining evidence, a reviewing court is limited to the certified record of the evidence that the SSA considered. Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985). Pursuant to the sixth sentence of § 405(g), the court may at any time order additional evidence to be taken before the Commissioner, but only upon a showing that there is new evidence that is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g). A showing of prejudice must be made before we will find that a hearing violated a claimant's rights of due process and requires a remand to the Commissioner for reconsideration. Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985). In a "sentence-six remand," the statutory provision itself specifically requires the Commissioner to return to the district court to file additional or modified findings of fact after the remand proceedings; and therefore, the court retains jurisdiction over the case throughout the remand proceedings. Jackson v. Chater, 99 F.3d 1086, 1095 (11th Cir. 1996).

A judge shall recuse himself if he is personally biased or prejudiced against a party or in favor of an adverse party, or whenever the judge's impartiality might reasonably be questioned. 28 U.S.C. §§ 144, 455(a). The standard is whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality. Christo v. Padgett, 223 F.3d 1324, 1333 (11th Cir. 2000).

The general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources.  Thomas, 293 F.3d at 1329.

In this case, the magistrate judge did not abuse his discretion in denying Taylor-Tillotson's motion for recusal himself because she did not show he had a personal bias or prejudice against her.  28 U.S.C. § 144.  The adverse ruling of which she complained -- the grant of 10 additional briefing days instead of 60 -- was insufficient to show a lack of impartiality because he did provide her some, if not all, of her requested relief.  Christo, 223 F.3d at 1333.  In addition, the record reflects that the magistrate judge often accommodated her scheduling requests, even when she requested them at the last minute.  Moreover, because she only pointed to the adverse ruling in her recusal motion, she did not show any bias stemming from an extrajudicial source.  28 U.S.C. § 455(a); Thomas, 293 F.3d at 1329.  Thus, the magistrate judge did not abuse his discretion in denying the motion.  28 U.S.C. §§ 144, 455(a); Thomas, 293 F.3d at 1319-20.

Nor did the magistrate judge err after he made the discovery that Taylor-Tillotson had been a litigant in a case involving similar issues in the Court of Federal Claims.  Instead of deciding Taylor-Tillotson's case based on evidence that the Commissioner had not considered, the magistrate judge remanded to allow the agency to make factual findings and determine the impact of the unearthed information on Taylor-Tillotson's DWB eligibility.  42 U.S.C. § 405(g); Cherry,

760 F.2d at 1193.  In so doing, the magistrate judge did not exceed the limited role of the district court in a Social Security appeal.  Ingram, 496 F.3d at 1260.

As for the magistrate judge's refusal to reschedule Taylor-Tillotson's May 8, 2015 hearing in front of the ALJ, it was not an abuse of discretion.  Although the district court retained jurisdiction over Taylor-Tillotson's case while on remand, the case was stayed, and the magistrate judge had no control over scheduling the ALJ's hearings.  Jackson, 99 F.3d at 1095.  But even if the magistrate judge could have ordered the refusal to reschedule, it would not have been an abuse of discretion because Taylor-Tillotson was not so clearly disabled that the ALJ committed a clear error in judgment in holding the hearing.  See Young, 358 F.3d at 863-64.  Moreover, Taylor-Tillotson's due process rights were not violated by attending the hearing while she was ill because any deficiencies in her self-representation would not have changed the outcome of the ALJ's decision in light of the evidence of her marital status.  Kelley, 761 F.2d at 1540.

Finally, as for the claim that the magistrate judge erred by entering his order granting summary judgment to the Commissioner before Taylor-Tillotson's response to the motion was due, Taylor-Tillotson has not shown how this arguable error prejudiced her.  Among other things, she has not indicated what she would have argued in response or shown that the response would have changed the magistrate judge's decision.  Kelley, 761 F.2d at 1540.

10

**AFFIRMED**.